PEOPLE v WALKER

1. Arrest—Drugs and Narcotics—Heroin—Probable Cause.

A defendant's arrest for possession of heroin was improper where the facts possessed by police at the time they stopped a car in which the defendant was a passenger and arrested the defendant did not give them probable cause to make the arrest without an arrest warrant.

2. Arrest—Arrest Without Warrant—Felony—Probable Cause.

Reasonable or probable cause for an arrest without a warrant stems from some fact, circumstance or information which creates an honest belief in the mind of a reasonable and prudent man; that is, there must be good reason to believe that the person arrested has committed a felony.

3. Arrest—Probable Cause—Facts—Time of Discovery.

Probable cause for an arrest may be based only on those facts in existence at the time of the arrest, not on any facts discovered after the arrest.

4. Arrest—Probable Cause—Informants—Anonymous Informants.

Police officers may proceed upon the basis of information received from an informer and need not disclose the identity of the informer; however, in order to establish probable cause for an arrest there must be a showing that the information was something more than a mere suspicion, a tip, or anonymous telephone call, and that it came from a source upon which the officers had a right to rely.

5. Arrest—Probable Cause—Informants—Anonymous Informants —Reliability of Information.

The police must be able to detail articulable facts which provide the basis for considering an unidentified informant reliable and the underlying circumstances on which the informant based his

References for Points in Headnotes
[1–3, 7] 5 Am Jur 2d, Arrest §§ 24–32.
[4–6] 5 Am Jur 2d, Arrest § 46.

tip where probable cause for an arrest is based substantially on the informant's tip; although the important facts are those which purport to relate the personal observations of the informant and prior events within the police's own knowledge, the informant may be considered reliable if his information is stated with such particularity and detail that, in common experience, it may be recognized as having been obtained in a reliable way.

6. ARREST—PROBABLE CAUSE—INFORMANTS—ANONYMOUS INFORMANTS —RELIABILITY OF INFORMATION—PERSONAL OBSERVATION—CORROBORATION.

An anonymous informant's tip was not of sufficient inherent reliability to provide probable cause for a defendant's arrest where the informant was completely unknown to police, the informant's information was not of such minute particularity as could only have been obtained by personal observation, and the police did not adequately corroborate the informant's tip.

7. SEARCHES AND SEIZURES—ARREST—PROBABLE CAUSE—PLAIN VIEW —LEGITIMATE INTRUSION.

Seizure by police of heroin which a defendant allegedly attempted to throw away while being arrested is not proper where the police did not have probable cause to arrest the defendant; the plain view doctrine is inapplicable where the initial intrusion is not otherwise legitimate.

Appeal from Berrien, William S. White, J. Submitted June 3, 1975, at Grand Rapids. (Docket No. 19048.) Decided September 10, 1975. Leave to appeal granted, 396 Mich —.

Ulyesses Walker was convicted of possession and control of heroin. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *John A. Smietanka,* Prosecuting Attorney, and *Sally M. Zack,* Assistant Prosecuting Attorney, for the people.

*Steven L. Schwartz,* Assistant State Appellate Defender, for defendant.

Before: McGregor, P. J., and D. E. Holbrook and N. J. Kaufman, JJ.

N. J. Kaufman, J. On May 31, 1973, defendant was convicted by a Berrien County Circuit Court jury of possession and control of a controlled substance, heroin, in violation of MCLA 335.341(4)(a); MSA 18.1070(41)(4)(a). He was subsequently sentenced to a term of from 2-1/2 to 4 years and now appeals of right.

On appeal, defendant raises several claims of error. Our holding on the first of these, that the police had no probable cause to arrest defendant, renders unnecessary any discussion of the other claims. Prior to trial, defendant made a timely motion for suppression of evidence and for a quashing of the information based on this claim. This motion was denied. This Court denied defendant's application for interlocutory appeal of this denial.

Defendant's conviction arose out of his arrest by the Benton Township police at about 1 a.m. on February 28, 1971. The events leading up to the arrest were precipitated by a telephone call which the police received at about 8:20 p.m. on February 27, 1971.

According to police witnesses, the caller stated that he had important information for the police chief, Paul Farris, but refused to give his name or describe the nature of the information. The caller was then given a number at which Chief Farris could be reached. The informant called Chief Farris, again refused to reveal his identity, and, according to Farris, told him that:

"Ulysus *[sic]* Walker had gone to Detroit for a load of dope and that he would be returning to the Benton Harbor area in approximately five hours and that he

would be going to an address on Superior Street when he returned and that he would have with him two females and that he would be driving a bronze-colored Cadillac, four-door, with Indiana license plates, or a black vinyl over yellow '69 Olds, four-door, with Michigan license plates."

Farris testified that the informant also indicated that the cars were owned by one Lucille Gayten who lived at the Superior Street address.

Chief Farris then relayed the information to an Officer Lester at the police station and told him to stop and arrest defendant. He ordered Lester to call the state police and ask them to look for either the Cadillac or Oldsmobile and, if either were sighted, to notify the Benton Township police. Lester did so and also determined the license number of the Oldsmobile and the fact that it was owned by Lucille Gayten. Officers went to Lucille Gayten's residence where they saw the Cadillac but not the Oldsmobile.

At this time, the police began a surveillance of the route which they felt defendant would use, notwithstanding the fact that the state police never informed them that the Oldsmobile was, in fact, returning from Detroit. At about 1 a.m., approximately the time which the informant had predicted, the police spotted the Oldsmobile. Upon stopping the car, the officers advised the five occupants that they were all under arrest for possession of narcotics. Charges against the other four were later dropped.

The officers then ordered the occupants out of the car. According to police testimony, defendant then jumped out of the right rear seat and "made a throwing motion". The arresting officer testified that he then saw a "white powdery substance flying through the wind". Despite the fact that the

wind was blowing at about 30 m.p.h., a substantial amount of the powder landed near the car and produced a "2-1/2, 3 inches wide strip, * * * 14 to 18 inches" in length. This substance was protected from the wind, scraped up by police, and later determined to be heroin.

We find that the defendant's arrest was improper. The facts possessed by the police at the time they stopped the car and arrested defendant did not give them probable cause to make the arrest.

The police did not obtain an arrest warrant. Under MCLA 764.15(c); MSA 28.874(c):

"Any peace officer may, without a warrant, arrest a person * * * [w]hen a felony in fact has been committed and he has reasonable cause to believe that such person has committed it".

Reasonable, or probable, cause stems from some fact, circumstance, or information which creates an honest belief in the mind of a reasonable and prudent man; that is, there must be good reason to believe that the person arrested has committed a felony. *People v Langston,* 57 Mich App 666; 226 NW2d 686 (1975). Probable cause may be based only on those facts in existence at the time of the arrest, not on any facts discovered after the arrest. *Id., People v Major,* 34 Mich App 405; 191 NW2d 494 (1971).

The Supreme Court, in *People v Charles D Walker,* 385 Mich 565; 189 NW2d 234 (1971), in discussing cases where police base their probable cause on an informer's tip, stated:

"From both the Michigan and Federal cases, it is clear that while police officers may proceed upon the

basis of information received from an informer and need not disclose the identity of the informer, in order to establish probable cause there must be a showing that the information was something more than a mere suspicion, a tip, or *anonymous telephone call,* and *that it came from a source upon which the officers had a right to rely."* (Footnote omitted.) (Emphasis supplied.) *Id.* at 575.

When probable cause is based substantially on an unidentified informant's tip, the police must be able to detail (1) articulable facts which provide the basis for considering the informant reliable and (2) the underlying circumstances on which the informant based his tip. *Aguilar v Texas,* 378 US 108; 84 S Ct 1509; 12 L Ed 2d 723 (1964), *McCray v Illinois,* 386 US 300; 87 S Ct 1056; 18 L Ed 2d 62, *reh den* 386 US 1042; 87 S Ct 1474; 18 L Ed 2d 616 (1967). See also *People v Daniels,* 60 Mich App 458; 231 NW2d 386 (1975). Important facts are those which "purport to relate the personal observations of the informant" and "prior events within the [police's] own knowledge". *United States v Harris,* 403 US 573, 581; 91 S Ct 2075; 29 L Ed 2d 723 (1971).

Here, the police knew nothing about the informant or about the basis for his tip. In *Spinelli v United States,* 393 US 410; 89 S Ct 584; 21 L Ed 2d 637 (1969), the Supreme Court held that, in a case where the police have no information about the informant or about the basis for his tip, he may still be considered reliable if his information is stated with such particularity and detail that, "in common experience [it] may be recognized as having been obtained in a reliable way". *Id.* at pp 417–418. The Court deemed the detailed information provided by the informant in *Draper v United States,* 358 US 307; 79 S Ct 329; 3 L Ed 2d 327

(1959), a "suitable benchmark". *Spinelli, supra,* at 416.

In *Draper, supra,* the tip was supplied by an informant who had provided reliable information in the past. The informant told police that defendant would be coming by train from Chicago to Denver with "three ounces of heroin". He gave police a detailed physical description (involving height, weight, hair color and complexion), specific arrival time, specific description of the clothes defendant would be wearing, and he stated that defendant would be carrying "a tan zipper bag" and habitually "walked real fast". The *Spinelli* court stressed that two factors in *Draper* made the tip reliable enough to provide probable cause. First, the information had the kind of details which could be provided only by one intimately connected with defendant's operation. Second, independent police work corroborated much of the informant's tip. The Court especially noted the police surveillance of the Chicago to Denver train and their corroboration of the informant's description of defendant before they arrested him.

We find that, compared to the tip in *Draper,* the informant's tip in the instant case was not of sufficient inherent reliability to provide probable cause for defendant's arrest. First, unlike the proven reliability of the informant in *Draper,* the one here was completely unknown to police. Where the informer has not proven himself reliable, his information must be all the more specific, the more self-verifying. It is not so specific here. We cannot find the informer's information to be of such "minute particularity" as could only have been obtained by personal observation. The *Draper* informant knew intimate details about defendant's operation. The informant here did not. He did not

provide such details as which car would be used, who would be accompanying defendant, or where the narcotics would be carried. The informant here gave no information which would indicate a familiarity with defendant himself. Chief Farris did not ask the informant to give a physical description of defendant, any personal habits, or any other facts which would show that the informant knew defendant personally. The informant offered no such description. The information given was, as was the information given in *Spinelli,* the type of "report that could easily have been obtained from an offhand remark heard at a neighborhood bar". *Spinelli, supra,* at 417.

Second, the police did not adequately corroborate the informant's tip. Plaintiff claims that sufficient corroboration was supplied by the facts that: (1) the Oldsmobile was not at Lucille Gayten's house, (2) the car was spotted near an interstate highway which led to Detroit at about the time predicted by the informant, (3) defendant had been under investigation by the police and had, two years earlier, been convicted of possession of marijuana. Virtually the same facts were considered inadequate corroboration by the Supreme Court in *Spinelli* where a search warrant was held to have been issued without probable cause.[1] There, an anonymous informant, whom the police considered reliable, told police that defendant was running a gambling operation at a specific address and was using specific telephone numbers to handle bets. The Government claimed that the tip was corroborated by the facts that (1) the FBI had, on several

---

[1] The Court held that the question of probable cause for a warrantless arrest involves an analysis "basically similar to that demanded of a magistrate when he considers whether a search warrant should issue". *Spinelli v United States,* 393 US 410, 417 fn 5; 89 S Ct 584; 21 L Ed 2d 637 (1969).

occasions, tailed defendant to an apartment, (2) a check of telephone records indicated that the apartment contained phones with the numbers specified by the informant and (3) defendant was known to the agents to be a bookmaker. The *Spinelli* Court stated that defendant's trips to the apartment and the presence of the telephone numbers there contained "no suggestion of criminal conduct when taken by themselves—and they are not endowed with an aura of suspicion by virtue of the informer's tip". *Spinelli, supra,* at 418. Nor could the bare assertion that defendant was a bookmaker provide corroboration.

Similarly, the corroborative evidence offered here is essentially neutral and cannot be made to look suspicious by the informant's tip. The informant need not have had intimate familiarity with defendant to know what kind of cars Lucille Gayten owned. Any number of innocent explanations could be given for the absence of one of her cars. The fact that the car was near an interstate highway does not mean that it was returning from Detroit. Indeed, the state police had specifically failed to provide this corroboration. The police "investigation" of defendant is also insufficient. At the preliminary examination, the police gave no details of such an investigation. In the absence of such details, the bare statement that defendant had been investigated provides no additional corroboration to the unknown informant's tip. Moreover, the fact that defendant, two years earlier, had been convicted for possession of marijuana cannot serve to corroborate information indicating that he is dealing in a much stronger drug, heroin.

Plaintiff also claims that the seizure by police of the heroin which defendant allegedly attempted to throw away was legitimate because it was in

"plain view". We must reject this claim. For the "plain view" doctrine to apply, the police must see the contraband from a place where they have a right to be. *People v Tisi,* 384 Mich 214, 218; 180 NW2d 801 (1970), *Harris v United States,* 390 US 234; 88 S Ct 992; 19 L Ed 2d 1067 (1968). To properly be in such a place, the initial intrusion must be otherwise legitimate. *Coolidge v New Hampshire,* 403 US 443, 465; 91 S Ct 2022; 29 L Ed 2d 564 (1971). Because the police here did not have probable cause to arrest defendant, the intrusion was not legitimate, and, therefore, the plan view doctrine is inapplicable.

The trial court's denial of defendant's motion to suppress was, therefore, in error. Reversed and remanded for a new trial.[2]

---

[2] This holding does not, as defendant requests, require us to order the dismissal of charges against defendant. *People v Burrill,* 391 Mich 124; 214 NW2d 823 (1974).